UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-mj-649 |
| | : | |
| TIM LEVON BOUGHNER, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

UNITED STATES' MOTION IN SUPPORT OF PRETRIAL DETENTION

Defendant Tim Levon Boughner is a flight risk, a danger to the community, and a danger to any pretrial services officer who would be required to supervise him if released.  Boughner—who has a lengthy and violent criminal history—used a metal bike rack to push against law enforcement officers and repeatedly spray them.  Boughner has shown that he is not amenable to supervision—as evidenced by his prior probation violations and attempt to evade law enforcement in this case.  For these reasons, the government respectfully moves this Court detain the defendant pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(a) (felony involving a dangerous weapon) and (f)(2)(a) (serious risk that such person will flee).   As explained below, no conditions or combination of conditions can ensure the community's safety or his return to this jurisdiction for future court proceedings.  As such, he should be detained pending trial.

This Court issued the instant Complaint against Defendant Boughner, charging him with Assaulting, Resisting, or Impeding Certain Officers Using a  Dangerous Weapon in violation of 18 U.S.C. §§ 111(a) and (b); Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);  Entering and Remaining in a Restricted Building or Grounds, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, and Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. §§

1

1752(a)(1), (2), and (4)); and Disorderly Conduct on Capitol Grounds, Impeding Passage Through the Capitol Grounds or Buildings, and Act of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(D), (E), and (F)) stemming from Defendant's involvement in the insurrection at the United States Capitol on January 6, 2021.

On December 7, 2021, FBI agents arrested Defendant in Lapeer County, Michigan and brought him before a U.S. Magistrate Judge in the Eastern District of Michigan for an initial appearance and removal to this District the next day.  The parties appeared on December 9, 2021 for a detention hearing.  At that time, Defendant Boughner consented to detention without prejudice to raise the issue of detention in the District of Columbia.  Consent Order of Detention, *United States v. Boughner*, Case No. 21-mj-30577, Dkt. 9 (E.D. Mich. Dec. 9, 2021).

Defendant made his initial appearance in the District of Columbia on December 14.  This Court scheduled a detention hearing on December 21, 2021, at 11 a.m.

## I. FACTUAL BACKGROUND

### A. The Attack on the United States Capitol on January 6, 2021

The United States Capitol is secured 24 hours a day by U.S. Capitol Police.  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police.  Only authorized individuals with appropriate identification are allowed access inside the U.S. Capitol.  On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral

College for the 2020 Presidential Election, which had taken place on November 3, 2020.  The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Michael Pence, who was also the President of the Senate, was present and presiding, first in the joint session and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and the U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

During the violent protest, several individuals were wearing bulletproof vests and anti-tear gas masks, and some were armed with weapons including bats, pepper spray, sticks, and zip

ties.  Also, during the protest, several law enforcement officers were assaulted and injured by these violent protestors while attempting to protect the U.S. Capitol and the individuals inside of the building.  These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol.  The Defendant, as detailed below, is currently charged with multiple instances of assault, as well as other criminal violations.

### B. Tim Boughner Identified in BOLO AFO-337

On April 23, 2021, FBI Washington reviewed the Body-Worn Camera (BWC) footage of Washington, DC Metropolitan Police Department (MPD) Officer C.W. and observed an unidentified individual assaulting law enforcement officers through the use of what appeared to be a chemical spray at the U.S. Capitol on January 6, 2021. The unidentified individual was then included as BOLO AFO-337[1] in an FBI Seeking Information poster which was disseminated by the FBI Office of Public Affairs on April 28, 2021.

The review of C.W.'s BWC revealed that at approximately 2:33:35pm, BOLO AFO-337, who was standing in the crowd of rioters, used a chemical spray against the officers (see picture below). Around this time, the crowd was throwing objects and deploying multiple chemical sprays against the officers.:

---

[1] BOLO stands for "Be On The Lookout." AFO stands for "Assault on a Federal Officer." These acronyms were used to identify suspects who used force against law enforcement, in order to ascertain their identities through public assistance.



At approximately 2:34:09pm, FBI Washington observed BOLO AFO-337 use the chemical spray again against the officers (see below). At approximately 2:35:20pm, the crowd continues to swarm and corner the officers while repeatedly assaulting them.



FBI Washington reviewed a video posted on YouTube (https://www.youtube.com/watch?v=0zyjCvDN4Ig), which revealed BOLO AFO-337 spraying an MPD Officer, who appears to have been directly hit by the spray and reacted almost immediately by moving away (see below).



Further research on open source revealed BOLO AFO-337 was referenced in various open-source channels by the moniker "#blackpufferwhitescarf." (See pictures below).







On May 10, 2021, FBI Washington identified the following post on Twitter account @SeditionHunters (posted on May 9, 2021) which contained new screenshots of BOLO AFO-337:



Queries on the above photo using an open-source research tool yielded the following possible match:



In June of 2021, FBI reviewed law enforcement records for Tim Boughner which included photographs of tattoos, scars, and marks.  The photographs of Boughner's tattoos include a five-point star on the inside of Boughner's right wrist, and a five-point star below a dragon on the inside of Boughner's left wrist.  The five-point star tattoo on the inside of Boughner's right wrist is consistent with the star photographed on the inside of the right wrist of BOLO AFO-337 on January 6, 2021.

On May 10, 2021, FBI identified and reviewed multiple Facebook accounts as a part of this investigation.  FBI reviewed Tim Boughner's Facebook account (Target Account 1).  On February 6, 2021, Boughner posted on Target Account 1 a video depicting what appears to be the scene from the United States Capitol on January 6, 2021.  The video, and a photograph taken from outside the United States Capitol Building posted on Target Account 1 indicates he was likely present at the United States Capitol on January 6, 2021 (see screenshots below).





Additional photographs viewed on Target Account 1 depict a pierced ear on Boughner which resembles one seen on BOLO AFO-337, as well as tattoos visible on Boughner's wrists which resemble tattoos visible on BOLO AFO-337 (see below).





In January 2021, a complainant (Complainant 1) reported to the FBI that people she knew personally were at the U.S. Capitol attack.  The people she knew were defendant's family members.  One of them was live-streaming on Facebook prior to the violence.

Complainant 1 logged into Facebook and went to the Facebook page for one of the people she knew (Target Account 2) and showed the content to FBI.  In one video posted on Target Account 2, FBI noticed a man who resembled the BOLO AFO-337 subject walk up to one of the people she knew. This same individual was seen in numerous videos walking towards the United States Capitol with the two people she knew who were related to Defendant.  A screenshot of what appeared to be AFO-337 captured from a review of Target Account 2 is posted below.



Complainant 1 did not originally recognize the man in the video who resembled AFO-337.  When shown additional images of AFO-337, he/she stated that AFO-337 looked like Tim Boughner and pointed out a tattoo visible in one photo of AFO-337 which looked like a tattoo on Tim Boughner's wrist.

A Facebook post on Target Account 2 on January 4th stated "Goodbye Michigan [name redacted], Tim and I are headed to D.C!"  On June 4, 2021, FBI reviewed content visible on Target Account 2.  During the review of information posted to Target Account 2, FBI identified information indicating that the people Complainant 1 knew and Tim Boughner were

present in Washington D.C. on January 6, 2021 and traveled to the United States Capitol
Building.

FBI viewed several short videos and two longer videos which were each over twenty
minutes long that were visible on the timeline of Target Account 2.  These videos were posted on
or after January 6, 2021.  Screenshots were captured throughout the video review to highlight
Tim Boughner walking toward the United States Capitol Building.  Tim Boughner appeared to
be wearing the same clothing as BOLO AFO-337.

In one video on Target Account 2, the account holder introduced herself, her husband,
and Tim to an unknown individual walking down the street.  In another video on Target Account
2, the account holder addressed someone who posted a comment on her live-stream video; she
stated that she had a lot of videos saved on her Snapchat.

The below screenshot of a video from Target Account 2 depicts Tim Boughner
(resembling BOLO AFO-337) approach the account holder of Target Account 2 (who was live-
streaming on her cellular device) just prior to she and Tim Boughner talking.



The below screenshot of a video from Target Account 2 shows Tim Boughner walking through the crowd.  Behind Tim Boughner is his brother who was wearing a black, white, and grey checkered jacket with yellow strips.



The below screenshot of a video posted to Target Account 2 shows Tim Boughner and his brother walking next to each other.



The below picture obtained from Target Account 2 depicts Tim Boughner in a tank top shirt with a five-point star tattoo visible on the inside of his left wrist, and an unknown design tattoo visible on the top of his right wrist.



The below screenshot of a video from Target Account 2 depicts Tim Boughner walking toward the United States Capitol carrying a cellular phone.  An audible noise was heard prior to Tim Boughner retrieving the cellular phone from his pocket; the sound was indicative of receiving a call or text. The United States Capitol Building can be seen in the top of the screenshot.



16

Tim Boughner and the people he was with crossed a fence line as they approached the United States Capitol Building; as they did, one of them stated that the time was 1:36 (presumed to be 1:36 PM EST). A loud noise was heard in the background which another person in the video stated was gunshots, perhaps blanks. Tim Boughner can be seen walking away from the people he was with as Tim Boughner moved through the crowd. One of the people stated "He's mad. He's my brother."

On February 17, 2021, an unknown person reported to the FBI that Tim Boughner posted what appears to be a personal recording on his cell phone of him at the U.S. Capitol during the riots onto his Facebook account (believed to be Target Account 1). The complainant advised that the video depicts various individuals fighting back Capitol police as well as spraying pepper spray at the police.

### C. Defendant Boughner's Assault on Law Enforcement Officers

On June 3, 2021, FBI Washington reviewed additional MPD Body-Worn Camera (BWC) footage belonging to Officer C. B. and observed BOLO AFO-337 spray Officer C. B. with what appeared to be a chemical spray (screenshots of the BWC are below).







On July 14, 2021, FBI reviewed a video originally posted to YouTube titled Just Another Channel which captured activities outside the United States Capitol Building on January 6, 2021. FBI identified Tim Boughner in the video on multiple occasions holding what appeared to be his cellular phone above his head indicative of recording (see below).



At 47:15 into the YouTube video, Tim Boughner can be seen holding what appears to be OC spray in his right hand as he walks toward a line of law enforcement officers (see below).



At 47:51 into the YouTube video, Tim Boughner can be seen spraying chemical spray toward law enforcement officers, an MPD officer immediately reacts by moving away from Boughner (see below). This appears to be the incident captured on MPD Officer C.W.'s body worn camera at 2:34:09 PM EST referenced above.



Following the issuance of the criminal complaint in this case, FBI identified additional footage of Defendant assaulting law enforcement.  In addition to spraying law enforcement,

Defendant also used a metal bike rack to push against law enforcement during a chaotic attack. A photo is below:



### D. Defendant Boughner's Statements on Social Media

On July 30, 2021, FBI served a search warrant, issued out of the United States District Court for the District of Columbia to Facebook for Target Accounts 1 and 2. On August 3, 2021, FBI reviewed the Facebook search warrant return for Target Account 1. The subscriber data provided by Facebook attributed the account to Tim Boughner with a verified phone number ending in -7112.[2] A review of conversations on Target Account 1 by Tim Boughner indicated Tim Boughner was in Washington D.C. on January 6, 2021 and was involved in riots at the United States Capitol Building.

- On November 8, 2020, Tim Boughner commented on a post using Target Account 1 saying "Trump 2020. This aint over."

---

[2] The FBI is in possession of the full phone number but has only used the last four digits here due to the public nature of this filing.

- On November 28, 2020, Tim Boughner commented on a post using Target Account 1 saying "All ex presidents get secret service when they leave White House. Trump won't be leaving for 4 more years."

- On December 8, 2020, Tim Boughner replied to a comment using Target Account 1 saying "stupid Biden will not be president".

- On December 20, 2020, Tim Boughner replied to a comment using Target Account 1 saying "they have to keep us busy and blind on what is really happening in our country. I can't believe I'm saying this but we are going to be at war. USA will be dealing with all the evils in this world. They tried to use the flu too steal our country."

- On January 3, 2021, Tim Boughner, using Target Account 1, asked a Facebook associate "Are you ready to go to DC Tuesday?" Boughner subsequently stated "I got a open spot if you want to go." Later, Boughner stated in the same conversation "Never will there be anything like this again bro. Might even get lucky and stomp some ass. Lmao".

- On January 5, 2021, Tim Boughner, using Target Account 1, posted "I'm on my way to Washington DC. To make sure Biden's doesn't become president".

- On January 6, 2021, Tim Boughner, using Target Account 1, posted "Tear gassed peppered sprayed guy got next to me got the rubber bullet. I grabbed a can from them and started spraying. I got it on video lol".  Boughner subsequently stated "That was wild. We made it to the senate floor till National guard started fight back"; a statement which indicates Boughner entered the Capitol Building although we have no information to corroborate this particular statement.

- On January 6, 2021, Tim Boughner, using Target Account 1, posted "Fucked those cops up".

- On February 17, 2021, Tim Boughner, using Target Account 1, posted "Biden's not the president".  He subsequently posted "I have to share. My life has not been the same since this day. I got pull threw something amazing. I still don't know how I ended up on the capital steps having a pepper spray fight with the capital police."

On August 27, 2021, FBI obtained a search warrant for information relating to the account for the phone number ending in -7112. Tim Boughner was identified as the account subscriber with an address of in Romeo, Michigan; the same address on Tim Boughner's Michigan driver's license.  The phone records show that the phone traveled from Michigan to

Washington D.C. on January 5, 2021, was near the United States Capitol Building on January 6, 2021, and returned to southeast Michigan on January 7, 2021.

### E. Defendant Boughner's Arrest and Confession

Prior to Defendant's arrest, FBI conducted surveillance at his purported address—his sister's home in Romeo, Michigan.  FBI soon realized that Defendant was rarely there. Electronic surveillance and physical surveillance together showed that Defendant did not have a stable living arrangement.  On December 7, 2021, FBI noticed unusual activity—Boughner was traveling north, to a community to which he did not have apparent ties.  Law enforcement located Boughner sleeping in his vehicle at a rest stop in Lapeer, Michigan.

After his arrest, Boughner confessed that he traveled to the Capitol on January 6, 2021. He confessed to spraying officers multiple times and using a bike rack to push against law enforcement.  He also admitted that after January 6, he quit his job and drove to other states.  He told agents that he recently deleted his Facebook account and started heading north to Lapeer because he had a feeling they were coming for him.

### F. Defendant Boughner's Criminal History

Defendant Boughner has an extensive and varied criminal history and contacts with law enforcement beginning at the age of 17.  His first conviction was for Felony Conspiracy Breaking and Entering a Building with Intent.  EDMI Pretrial Report at 4.  He was fortunate enough to receive a probationary sentence in that case on August 5, 1998, but was quick to violate probation within two months.  On October 14, 1998, the court issued a bench warrant for his probation violation.  He pled guilty to the violation and was sentenced to 1 year of jail on November 24, 1998.  Less than a month later, on December 18, 1998, the court issued another bench warrant for him for another probation violation.

His second conviction for Misdemeanor Larceny resulted in another one-year sentence in May 2001.  On April 1, 2002, he was sentenced to 90 days in jail for Felony Stolen Property – Receiving/Concealing.  At the same time, he had a pending charge of Felony Assault with a Dangerous Weapon that resulted in a nolle prosequi, which being convicted of misdemeanor reckless driving, misdemeanor open alcohol in vehicle and misdemeanor assault and battery.

On January 9, 2006, he was convicted of misdemeanor operating allowing intoxicated person to operate motor vehicle—resulting in 93 days of confinement.  In May 2007, he was convicted of Felony Controlled Substance Possession. One year later in February 2008, he was convicted of misdemeanor domestic violence.

## II. ARGUMENT

### A.  Applicable Statutory Authority

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves … (A) a crime of violence…for which a maximum term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another or (B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Defendant's assault with a dangerous weapon on law enforcement is a crime of violence pursuant to 18 U.S.C. § 3142(f)(1)(E).  Defendant has

been charged with multiple violence offenses under 18 U.S.C. § 111 and 18 U.S.C. § 1752, to include §111(b).

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community – an inquiry that considers (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) his history and characteristics, and (4) the nature and seriousness of the danger posed by his release. The United States seeks detention because no combination of conditions will assure that the defendant will not pose a danger to the safety of the community.

**B.  The 18 U.S.C. § 3142(g) Factors Weigh in Favor of Detention.**

The government proffers the information contained below in support of establishing the requisite clear and convincing evidence requiring the defendant's detention.

i. <u>The Nature and Circumstances of the Offense</u>

The defendant's crimes are serious and cannot be viewed in isolation—he was one of thousands of individuals who descended upon the Capitol on January 6 to obstruct a cornerstone process of our democracy. The defendant was not just a part of the crowd or someone who got caught up in the moment. He traveled from Michigan to Washington, D.C. with two others.  He was at the front of the crowd that assaulted police lines on the West Terrace.  He focused his violent assaults against law enforcement officers that day.  He rushed them with a metal bike rack and then stood in front of police and aimed and sprayed a chemical irritant at them.

The nature and circumstances of this offense weigh heavily in favor of detention. In *United States v. Chrestman*, this court articulated a set of factors for evaluating the nature and circumstances of offenses committed at the Capitol, and how those factors bear on detention.

525 F. Supp. 3d 14, 26-27 (D.D.C. 2021). Those factors include whether the defendant: (1) is charged with felony offenses, or solely with misdemeanors; (2) engaged in prior planning for his criminal conduct before arriving at the Capitol; (3) carried or used a dangerous weapon at the Capitol; (4) coordinated with other participants before, during, or after the riot; (5) assumed a formal or de facto leadership role with respect to the riot; and (6) injured, attempted to injure, or threatened injury to others; damaged or attempted to damage property; actively threatened or confronted law enforcement officers; or promoted or celebrated efforts to engage in such conduct. *Id.*

Almost all of the *Chrestman* factors put the defendant in a more serious category and demonstrate his dangerousness. First, he has been charged with a felony and crime of violence. Second, Defendant engaged in planning prior to arriving at the Capitol, namely coordinating with his family members to travel from Michigan to D.C. and inviting others to D.C. to "stomp some ass."  Not only did he plan to travel, but he traveled with the intention of being violent. When given the opportunity, he attacked officers with the mob of rioters around him.  As the Court said in *Chrestman,* "[t]hese motives and steps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense, as a premeditated component of an attempt to halt the operation of our democratic process, and the danger a defendant poses not just to the community in which he resides, but to the American public as a whole."  *Id.* at 26.

Third, his actions demonstrated a dangerous hostility to law enforcement. The Court noted in *Chrestman*, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement…". *Id.*  The defendant repeatedly confronted police with, menacing behavior and an assault.

In particular, using chemical spray against law enforcement is an extremely serious offense.  In a recent decision, Judge Contreras noted that the court could not find a case in which a Capitol rioter used pepper spray on law enforcement officers and was released pending trial when the government sought detention.  *See United States v. Brown*, --- F. App'x ---, 2021 U.S. Dist. LEXIS 167405, at *14-15 (D.D.C. Sept. 3, 2021).[3]

The nature and circumstances of the offense weigh in favor of detention.

ii. <u>The Weight of the Evidence Against the Defendant</u>

The weight of the evidence weighs in favor of detention. He is seen on camera spraying a chemical irritant at police officers. He was photographed/video recorded from multiple camera angles.  The clothes he is wearing while he assaults officers matches his clothing in several social media posts.  A witness who knows him personally recognized the defendant in the videos and/or photos. Defendant also took videos and photos that he posted on social media that demonstrate his presence at the Capitol, and how close he was to the police line he broke through right before spraying officers. He made incriminating, violent statements on Facebook following the attack saying he "[f]ucked those cops up."  Upon his arrest, he confessed to the agents that he used the metal bike rack to push law enforcement and that he sprayed the law enforcement

---

[3] The Memorandum Opinion in Brown notes four other cases in which rioters who deployed chemical spray at law enforcement were ordered detained: *United States v. Khater*, --- F. App'x ---, 2021 WL 3711402, at *1 (D.C. Cir. July 26, 2021); *United States v. Quaglin*, 851 F. App'x 218, 219 (D.C. Cir. June 24, 2021); *United States v. Worrell*, 848 F. App'x 5, 6 (D.C. Cir. June 14, 2021); and *United States v. Gieswein*, 2021 U.S. Dist. LEXIS 139235, at 3168148, at *7, *10, *35, *50 (D.D.C. July 27, 2021). *Brown*, 2021 U.S. Dist. LEXIS 167405, at *14-15. The government is aware of at least four other such cases: *United States v. Caldwell*, 1:21-cr-00181-CKK; *United States v. Lazar*, 1:21-cr-00525-ABJ; *United States v. McHugh*, 1:21-cr-00453-JDB; and *United States v. Schwartz*, 1:21-cr-00178-APM. Additionally, the defendant in *United States v. Mitchell Todd Gardner, II*, 1:21-cr-00622-APM (including an allegation that the defendant deployed a lachrymal agent against law enforcement officers in the Lower West Terrace tunnel) is on pretrial release because the government did not seek detention.

repeatedly.  Collectively, there is strong evidence of guilt and a conviction is likely. This factor also supports detention.

### iii. The History and Characteristics of the Defendant

Defendant has a recurring pattern of criminal activity and probation violations beginning in 1998. He has been convicted of range of crimes—breaking and entering; larceny; felony stolen property; reckless driving; assault and battery; open alcohol; allowing intoxicated person to operate motor vehicle; felony possession of controlled substance; and domestic violence.

Not only does Defendant have an extensive criminal history, he also has a history of probation violations—showing that he is not amenable to supervision.  Defendant's prior and recurring history of assaultive behavior counsels that this defendant resorts to violence when he sees fit. In the instant case, Defendant committed violence on law enforcement officers to advance a political goal.

Defendant has ties to the district of his arrest, but does not appear to have ties to Washington, D.C. Even in the district of his arrest Defendant's life is unstable.  He appears to be mostly living in his car and since January 6th;  he has been taking spontaneous road trips.  Upon arrest, he confessed to law enforcement that he was planning to leave again since they expected they were coming for him.  His own family member described him as being known "to sleep here and there" and did not believe he would stay with her even if she became the third-party custodian.  EDMI Pretrial Report at 2. The history and characteristics of Defendant weigh in favor detention.

### iv. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth factor, the nature and seriousness of the danger to any person or the community posted by a defendant's release, also weighs in favor of Defendant's detention.  The

charged offenses involve repeated violent attacks on law enforcement. The Facebook conversations and posts also demonstrate Defendant's unapologetic nature regarding his criminal activity that day.  In addition, Defendant used dangerous weapons, a metal bike rack and chemical spray.

Given the above assessment of all four relevant factors, no conditions or combination of conditions can effectively ensure the safety of any other person and the community. Based on these factors, anything short of detention would be insufficient to assure his appearance in D.C. and keep the community safe.

### III. CONCLUSION

WHEREFORE, the United States respectfully requests that the Court GRANT the United States' Motion for Pretrial Detention.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     /s/ *Mitra Jafary-Hariri*
MITRA JAFARY-HARIRI
Assistant United States Attorney, Detailee
MI Bar No. P74460
211 W. Fort Street, Suite 2001
Detroit, MI 48226
mitra.jafary-hariri@usdoj.gov, (313) 226-9632

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-mj-649** |
| | : | |
| **TIM LEVON BOUGHNER,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## <u>ORDER</u>

Upon consideration of the Government's Motion for Pretrial Detention as to Defendant

Tim Levon Boughner,

It is this _____ day of December 2021,

**ORDERED**, that the Motion for Pretrial Detention is hereby **GRANTED**.


_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE FOR
THE DISTRICT OF COLUMBIA